Here ye, here ye, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Anne B. Jorgensen presiding. Please be seated. Your Honor, the final case in the docket this morning is 2-22-0434. Daniel Aukerman, the former, uh, Daniel Aukerman v. Appellate, the former Department of State Police, Illinois County State's Attorney, defends Appellee. Arguing on behalf of the Appellate is Mr. Graham Curran. Arguing on behalf of Appellee is Christina T. Hanson. Alright, are both sides ready to proceed? Yes, Your Honor. Then, will you ready? Yes, Your Honor. May it please the Court, Attorney Graham McCurley on behalf of, uh, Daniel Aukerman. Allowing the legislature to determine the scope of Second Amendment rights, merely by labeling certain crimes as felonies, no matter how minor, is contrary to the existence of fundamental rights. The demonstrated disrespect for the legal norms of society standard articulated in U.S. v. Jackson and mentioned on pages 31 and 33 of the Appellee's brief is not consistent with Bruin and has no limiting principle. What's the metric for deciding which citizens to disarm? Who demonstrated a disrespect for the legal norms of society? Are we to disarm misdemeanors, those who offend traffic violations, or those who are liable of a civil offense? If you can't look at public safety or public interest, then could any felonies be categorically banned? Any felons convicted of certain crimes, I should say. Yes, Judge. I think that there has to be some type of drawing line. I think the drawing line is what Amy Coney Barrett articulated in her dissent in Cantor v. Barr. That there has to be some proclivity for violence or dangerousness. Your argument is there is no inherent dangerousness in cannabis trafficking? Correct, Judge. That would be the appellant's position right now. There are many dispensaries who operate in Illinois that quite literally traffic cannabis legally. And there's nothing inherently violent about selling a plant to other individuals. At the time that Mr. Aukerman received his conviction, marijuana in the state was illegal, but now it is legal to traffic cannabis. Obviously, you have to have the requisite licenses, but that's the position. Well, he wasn't licensed. This was back at the time that he was trafficking. It was a serious offense. He was charged with class X felonies, correct? Yes, Judge. But if we look at, I guess the term serious felony has really no legal definition, at least in Illinois. As I mentioned in my brief, there are certain forcible felonies. And conspiracy to traffic cannabis is not one of those forcible felonies. Let me ask you this. With regard to his character, reputation, wouldn't it have been advisable to submit certified records from the 2006 arrest in Oklahoma? He knew that from the 2010 denial of his application that that was something that should have been provided, correct? Yes, Judge. Unfortunately, the appellants did not provide any records out of Oklahoma. I don't want to mislead the court, but I do recall that there were some type of records that were turned over in the Illinois State Police's background check, and there was something along the lines of that it was a syphilis forfeiture case out of Oklahoma. He didn't provide any certified records. There was a deal struck that he'd get a certain amount of his forfeited cash back. Yes. And what about this? As I was looking at this, in terms of his reputation and character, there was no reputation evidence presented, correct? Well, I believe his wife and then his friend Kevin Casper's act. But they didn't testify to his reputation in the community. They just offered their own support for him. And his wife said she wasn't really familiar with his drug involvement. Yes, she wasn't. She said that she was. I believe she said that she wasn't. And again, this hearing was maybe over a year ago. But I believe her testimony was that she was unfamiliar with his criminal involvement. And Mr. Casper's act testified something along the lines of that he never saw Mr. Aukerman get into a bar fight or he never saw him act as a violent person. What about, you know, he got his class X felonies reduced and he got probation and 18 days in jail. Why no affidavits from the agents that he worked with attesting to his character and the wonderful work that he did? That's a good question, Your Honor. You know, he's not foreclosed from reapplying in the future. But these are pieces of evidence that are absent and that are on its face. That's the type of evidence a judge would like to hear in awarding a defendant the right to possess a firearm. And that's the first step towards concealed carry, right? Yes, Judge. One of the things I'd like to raise, though, is there's, I guess there's, again, I want to remind the court that there's two issues here. It's did the trial court abuse their discretion? And then is this, and then if the answer to that question is no, then is this a ban? On Mr. Aukerman right now, does that violate the Second Amendment because of his status as a nonviolent felon? It seems like that we're discussing whether or not the trial court abused its discretion. So I'd like to talk about maybe a couple metrics that I think where the trial court abused their discretion. The trial court judge mentioned two things that struck out to me, where that six years was not enough time for Mr. Aukerman to have shown that he's not, his reputation is not such that he's likely to act in a manner dangerous to the public safety, even though the judge never made any explicit finding that Mr. Aukerman would act dangerously to the public safety or contrary to the public interest. The judge just said six years isn't enough. And also the judge said something along the lines of that the civil asset forfeiture case in Oklahoma raises more questions to the court than it answers. And then I guess that goes back to my initial opening, is that what's the metric for deciding which citizens to disarm who demonstrated a disrespect for the legal norms of society? In this case, it appears that if you're liable for a civil offense in a civil asset forfeiture case, that that in and of itself was one of the factors that the judge at the trial court took into account to deny Mr. Aukerman's Second Amendment right via this relief for his firearm rights restoration. And then I want to speak briefly and remind the court and talk about the majority opinion in Cantor v. Barr, not Amy Coney Barrett's dissent. But keep in mind that there was an explicit factual finding in the Seventh Circuit Court of Appeals that the historical evidence is inconclusive as to whether felons were categorically excluded by the Second Amendment. Because remember, pre-Bruin, the court still would engage in a historical analysis. Just at step one, if the challenge law regulated activity that was unprotected, then the analysis would end right there. But if, however, it was inconclusive or the regulated activity suggested that it was not unprotected, courts would then move to step two and apply either strict scrutiny or intermediate scrutiny. And that's what they did in Cantor v. Barr. At step one, they said, wait a minute, this wasn't just a little footnote, this was an actual point heading by the Seventh Circuit Court of Appeals. They said the historical evidence is inconclusive as to whether felons were categorically excluded from the Second Amendment. So now we need to move on to step two and apply intermediate scrutiny. And that's what they did. So why do I mention that? Because after Bruin, there is no more judicial balancing. There are no more interest balancing tests. And we are just to look at the historical evidence. And again, the Seventh Circuit Court of Appeals explicitly found that the historical evidence is inconclusive. And so then going back to Jackson, the case that was cited on pages 31 and 33 of the appellee's brief, they go through, that court goes through and lists a bunch of laws, and I'm going to go through one by one that Your Honors will allow. And then they conclude that, again, this standard of demonstrated disrespect for legal norms of society. And they say that these laws demonstrate that Congress has the authority to categorically disarm felons. But the laws that they're referencing, and this can't be reconciled with Bruin, because Bruin talks about that these laws, these historical analogs have to be relevantly similar. And how we determine if it's relevantly similar, we have to look at the why the law burdens the right and how the law operates. And the laws that they're citing are laws from the 1600s in England disarming those who refused to participate in the Church of England. They're citing colonial American laws that prohibit Native Americans, African Americans, and Catholics, and other religious minorities from owning arms. And, again, and then they conclude by saying that these laws, that Congress can prohibit possession of firearms of those who have demonstrated disrespect for legal norms of society. But none of these analogs are relevantly similar. The why and the how behind these laws are not the same. Now, Bruin did mention that it doesn't have to be a regulatory straitjacket, but it also can't be a regulatory blank check. And I respectfully submit to your honors that using laws from the 1600s in England, that the Church of England prohibited people from owning arms who don't participate in the Church of England, disarming Native Americans, African Americans, and Catholics, that if you're going to use those laws to justify a categorical ban on the Second Amendment, I think that that's more in the line of writing a regulatory blank check than it is in a regulatory straitjacket. Is your answer is forcible felonies only? Or do I have that wrong? I'd say forcible felonies is a good start, but respectfully, I think that Annie Coney Bear's descent in Canterbury Bar is a good guiding post, and I think her exact words were that if someone has a proclivity for violence or dangerousness, and what she explains is that that could include some felonies, but it also could include some misdemeanors, is that we're not just making this arbitrary distinction at felonies versus misdemeanors. So, for example, like in Illinois, I put in my brief, because not all felonies are inherently violent. So, like, for example, accepting a bribe at a sporting event in Illinois is a Class IV felony, and I mentioned that in my brief. Now, I'm not saying someone should miss a free throw on purpose because someone paid them, but the point is that are we really going to dishonor those type of citizens? Also, destroying, altering, or concealing a will longer than 30 days after the death of the testator is known. It's a Class III felony in Illinois, punishable by up to five years in the Department of Corrections. We're focusing on cannabis trafficking. Understood. There is case law that has discussed the dangerous element of drug trafficking, dangerous for both the traffickers and people who want to get access to the drugs. Understood. But if we're looking for the best historical support for the legislature to disarm citizens, we'd have to find historical analogs that did the same. Do you mean it would have to be on drug trafficking? I think it'd have to be on drug trafficking or showing that. Or could it be more broadly those likely to incite a breach of the peace or provoke a breach of the peace? I think drug trafficking or even possibly prohibition during alcohol, when alcohol is illegal, where people who trafficked alcohol at the time when it was illegal, were they stripped of their Second Amendment rights? And, again, remember the burden of proof is on the government to put forth the historical analogs. And if we look at the government's brief, they mentioned the one that went, they mentioned the United States v. Jackson case out of the Eighth Circuit Court of Appeals, and then they also mentioned a state's ratifying proposal for Pennsylvania at the time of the constitutional conventions which said that it basically guaranteed the right of arms unless for crimes committed or real danger to the public injury. And so that was one of the historical analogs that the government put forth in their brief. But let me address that. That proposal didn't make it into the Second Amendment, and it didn't make it into the Pennsylvania state constitution. That was a dissent from the minority at that ratifying convention. But since it never made it into the text of the Second Amendment, that proposal can't counter the actual text of the Second Amendment, and it can't serve as a historical analog because that was just a proposal at a convention. That was never an enacted law. And your challenge here is an as-applied challenge. Yes, Judge. It's not a facial challenge. So how did the trial court abuse its discussion in finding that the defendant or the plaintiff had not established the public interest or safety? And, Judge, respectfully, I think it's two distinct issues. I think the abuse of discretion I think is the statutory basis. That's the second argument. And then there's the constitutional argument. And so far as the judge denying Mr. Opperman, I believe for the reasons I stated earlier, the judge found that under factors two and three, under 430 ILCS 65-10C, that he found that Mr. Opperman's history and reputation are such that he's likely to act in a manner dangerous to the public safety, and it would be contrary to the public interest to grant Mr. Opperman to restore his Second Amendment rights. But as I mentioned in my brief, that the trial court judge didn't make any express findings that Mr. Opperman was a dangerous person. The trial court's argument was essentially that the crime that Mr. Opperman committed was severe, it was serious, and if I may finish my thought, Your Honor, that it was severe, it was serious, and that, therefore, because of that and the civil asset forfeiture case, that, therefore, he cannot have his farm rights restored. And I look forward to rebuttal argument, Your Honors. Do you have any other questions? Any additional questions? All right. Counsel, you have an opportunity for a reply. All right. Thank you. Thank you. Good afternoon. May it please the Court. I'm Assistant Attorney General Christina Hanson on behalf of State Respondent Appaloo, the Illinois State Police. The circuit court judgment denying Petitioner Opperman's request for relief from the denial of his void card application should be affirmed. Plaintiff cites to authority that addresses a permanent categorical ban on all possession of firearms by felons. But in Illinois, individuals with felony convictions are not subject to a perpetual ban on firearm possession. Section 10 of the Void Act provides a mechanism by which a convicted felon may obtain relief from the firearm prohibition imposed under federal and state law if he carries his burden of showing to the satisfaction of the circuit court or the director, depending on the predicate, felony, that the four requirements of Section 10C, that the four Section 10C criteria are met. Opperman is not subject to a perpetual or categorical ban as a felon, but the circuit court made an individualized specific determination after an evidentiary hearing that granting him relief from his firearm prohibition was improper because he was unlikely to act in a manner that was not dangerous to the public's safety and also that granting him relief would be contrary to the public interest. Those are the Section 10C2 and 3 findings that the judge specifically made. As the Illinois Supreme Court made clear in Evans, the determination of whether the requirements are met are within the circuit court's discretion,  that's only if they're arbitrary, fanciful, or ones that no reasonable person would make. I know it was not the government's burden here, it was the plaintiff's burden, but did the government try to get their hands on the records from Oklahoma? Not to my knowledge. Did the police make any attempt to get those records? To my knowledge, the only... circumstances in Oklahoma were minor. To my knowledge, the state police had the arrest, the evidence that the arrest occurred, and then when you apply for a FOIA card, it's the applicant's burden to present the evidence that they are qualified because their felony conviction disqualifies them from possessing a firearm, and Opperman did not present that documentation to the state police, and so any additional documentation on that arrest is not, to my knowledge, part of the record. And there was no information regarding the cooperation he provided to get his Class X felonies reduced? There was. One of the exhibits to the record that was in the circuit court was the transcript of his sentencing in that. Where he agreed to cooperate, but beyond that, that was it? Well, his own testimony established, and that's one of the factors that the circuit court looked at was the seriousness of his crime. His own testimony was that although he was convicted only of one count of conspiracy to commit cannabis trafficking, which was a Class I offense, he admitted at the evidentiary hearing that on four occasions he had committed what on? He was charged with Class X felonies of illegal interstate transportation of large quantities of cannabis, and so the seriousness of his crime is at the crux of the circuit court's determination that he is not likely to act in a manner that is not dangerous to the public safety. Well, he completed successfully a lengthy term of probation and has been free of any criminal involvement for over 10 years. Well, the conviction, that went to the assessment. The court looked at the seriousness of his offenses and then to the evidence, to any evidence that he presented that might assuage concerns about his risk, the risk that he posed to the public safety. But isn't the fact that he successfully completed probation, and I don't know if you're familiar with the DuPage County Probation Department, but they're pretty good at their jobs, and he completed it successfully. He was under pretty strict terms. He did, and that is one of the factors that the court looked at, but also considered that he had a relatively short period of responsible, unsupervised conduct. And as the court and evidence made clear and the circuit court also noted, he's not perpetually banned because he can still reapply. In the court's discretion, based on the seriousness of his crimes, the testimony that he gave regarding the 2006 Oklahoma arrest, which the circuit court noted, or concluded, that his testimony regarding the circumstances of that arrest were not, his testimony was not credible on that point, and that the Oklahoma arrest sort of fit the pattern of the criminal activity that he was engaged in in 2010. He was arrested in Oklahoma, which is a state sort of roughly between Illinois and California, with a large quantity of cash that was detected by a K-9 unit. And Aukerman offered no explanation for why a K-9 unit would have been called into a routine traffic stop and also presented no evidence to support his testimony that the cash that he had on him wasn't related to drug activity but was his father's. He claimed there was video evidence, but he didn't produce anything relating to that arrest. And in a Section 10 hearing, that's the petitioner's burden. And so all of the evidence taken as a whole, along with the character witnesses that he presented, were his wife and a friend of his, and neither of them could give any testimony regarding the criminal activity that he was involved with. In fact, quite the opposite, his wife's testimony was that she purposefully, even though she had been living with him for nine years at the time of that 2010 arrest, she purposely was unaware of his criminal activity for her own safety, which goes to the dangerousness of the offense. And his friend's testimony was that he also was not aware of any of Aukerman's criminal activity. Can I ask, are there felonies that you think would not require a bail? Are there? Well, the statute, the way that Section 10 of the FOIA Card Act works, is that other than the first criteria is whether you've been convicted of a forcible felony within the past 20 years. But beyond that, the court looks at the criminal conviction as well as other condition of whether somebody presents a threat to the public safety or not. So there doesn't need to be an enumeration of specific felonies because the statute incorporates sort of a mechanism by which a felony conviction can be, the firearm prohibition for a felony conviction can be discharged. And so here, based on the evidence, the circuit court did not reach that conclusion. Again, after hearing the evidence and assessing the credibility of the witnesses, the circuit court determined that Aukerman did not meet Section C-2 and Section C-3 in the act because he couldn't show that he could be trusted to possess a firearm and act in the interest of public or consistent with the public safety. And it was not a decision that no reasonable person could reach. Moore could often sustain an as-applied constitutional challenge to Section 10C of the Foyd Card Act. Although the Supreme Court's Bruin decision changed the framework for analyzing firearm regulations under the Second Amendment, it did not cast doubt on categorical exceptions to the right to bear arms. Could I ask though, does Bruin, in your opinion, forbid a sort of subtle analysis like whether someone is not likely to act in a manner dangerous to the public safety or that relief would not be contrary to the public interest? Do you believe Bruin forbids that sort of? Bruin talks about the right to bear arms for law-abiding, responsible citizens. And so the Bruin decision itself doesn't cast any doubt on prohibitions for carrying arms. Indeed, the justices specifically stated that in the Alito concurrence, the court said that Bruin does not disturb anything that the Supreme Court said in Heller and McDonald regarding restrictions that may be imposed on the possession of carrying guns. And Heller had said that nothing in its opinion cast doubt on the longstanding prohibitions of the possession of firearms by felons. And that was reiterated again in the Supreme Court's McDonald City of Chicago decision. And like I said, that was mentioned in the Alito concurrence, and it was also part of Kavanaugh. But Justice Kavanaugh's concurrence was joined by Justice Roberts, which said nothing in the court's opinion shall be taken to cast doubt, again, on longstanding prohibitions on the possession of firearms by felons. And it was sent to opinion. Do you believe in your case that a felony could be a bar? It can. What about these subtle determinations by a trial court based on individualistic characteristics? Well, the statute goes beyond. The Second Amendment is not violated if a felon is disarmed. A categorical prohibition does not violate the Second Amendment, even after Bruin. But Illinois provides additional. So Illinois essentially provides more than the Second Amendment requires. And so there are no issues with the specific criteria that the state statute uses because the categorical prohibition is consistent with the Second Amendment to begin with. It's your position that the defendant's evidence that he presented did not establish a prima facie case for permission to get a FOIA cover? That's your position, right? That his evidence was insufficient? To overcome, yes, to overcome that his felony conviction prohibited him from possessing a firearm. And again, as the circuit court and the Illinois Supreme Court decision in Evans says, he can reapply for a FOIA card at a future time. We noted one of the criteria that the circuit court looked at was the length of responsible, unsupervised activity. And so if that or a change in circumstance occurred, then he could reapply. And the defendant, or the plaintiff I should say, testified he wanted to possess a firearm for his own safety, safety in his home, correct? I believe so, yes. And there's no restriction on his wife from getting a FOIA card, is there? Not that I believe her testimony at the time was that she was, she had applied but there were some issues on her record that she was working through. So I can't say for certain, but his dispossession I don't think would disqualify her. So in sum, the denial of Qualcomm's request for relief from the denial of his FOIA card application did not violate the Second Amendment. We ask that you affirm the circuit court's judgment. Any other questions? Nor do I. Thank you very much for your argument. And then counsel, do you wish to reply? Yes, Judge. Thank you for your rebuttal time, and may it please the Court. I just want to make two things clear. There's the two issues that did the trial court abuse its discretion. I think it's, I want to speak briefly on what Your Honor asked about. Are these subtle determinations in the FOIA card, Fire and Rights Restoration Statute, are those consistent with Bruin? And I argue that those cannot be consistent with Bruin, because Bruin explicitly rejected the interest-balancing judicial test. And so that these – I think, and I'm not interrupting to challenge you, but just to give you an opportunity to rebut, counsel, the opponent's comments. I understood her to say it's okay to ban felons, but they can have relief from this categorical ban under these specific circumstances, but that the ban itself, according to her, is not violative of Bruin. I think that Illinois is closer than maybe Wisconsin, even though the Seventh Circuit upheld it in Canterbury Bar because they had a blanket prohibition. Illinois doesn't have a blanket prohibition. But Bruin, so that there can't be any more interest-balancing, there had to be sort of objective criteria. And so when we're looking at the – again, we're just speaking about the abuse of discretion. Well, again, I'm not necessarily adopting this, but just to expose what I understand the state's arguments to be, is that the objective criteria is that the person's a felon. And so that's okay, but then they have this opt-out, which is sort of, I guess, outside of the Bruin analysis. Yes. That's what I understood her to say. I'm not promoting that. Yes. I understand that if the objective standard – if we're going to just draw the line and say, hey, this is the objective standard, felon versus non-felon, then we run into the issue again of are we going to prohibit – what type of felonies are we going to prohibit or not prohibit? Or are we going to just draw the line at felon? And if we're going to just draw the line at felon, again, that can't be reconciled with Bruin, because we're going to have to determine what felonies, if any – again, I talked about – I know this isn't before the court, but are people who accept a bribe in a supporting event, are they allowed to receive their second memorandum? Are they going to be disarmed? So if there's going to be a line drawn, okay, well, we're just going to draw the line at felony. Well, what's the metric for deciding which citizens are disarmed and which citizens aren't disarmed? And then I think then it goes into the Bruin analysis of we have to find a historical analog that disarms felons for the conduct of which Mr. Opperman engaged in. And so in this case, Illinois does have a specific statute that will – that in theory grants him relief, but it's still not objective in that the trial court said six years isn't enough. But maybe a different judge would think six years was enough, or maybe some judges think ten years is enough. So my point is that there's no objective standard. Illinois does have a statute that allows felons to have their rights restored, which I think is – which is good, and they exclude for 20 years those who are convicted of forcible felonies. But there's no objective criteria for the judge to make this determination. I think that that can't be reconciled with Bruin. And if there's – and I think that's it for my rebuttal, Judge. If there's any other questions, I'd be happy to answer them. I think you've made your point. Your position is the evidence the plaintiff presented was sufficient on its face, and it was unrebutted. Is that – do I summarize your position? Yes, Judge, and I – that's obviously my position, but also even if he didn't make that – I'd say even if the court finds that he didn't make that prima facie evidence, now we have to get to the constitutional argument. Is the statute unconstitutional as applied to Mr. Opperman? So stated differently, I think Mr. Opperman made a prima facie case under the Illinois statute, and the court abused its discretion. But if the court doesn't agree with me, then we still have to wrestle with the second amendment challenge. Thank you, Your Honor. Any other questions? Nor do I. Thank you very much for your argument. Thank you. Thank you both. Interesting arguments this afternoon.  You will have a written decision in due course.